**A.B. FAIRFIELD, et al., Appellants,**

v.

**STONEHENGE ASSOCIATION COMPANY, et al., Appellees.**

No. C14–83–786CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 19, 1984.

Clinard J. Hanby, Haynes & Fullenweider, John C. Allen, Houston, for appellants.

Sharolyn Wood, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

JUNELL, Justice.

This is an interlocutory appeal from an order granting a temporary injunction. The appellees, Stonehenge Association, Inc., (Association), John V. Schmidt, Mike P. Schieffer, Hank Curtis, Robert O. Grote and Linda Wexler filed suit to temporarily and permanently enjoin the appellants, Texas Contemporary Building Company (Texas Contemporary), Stonehenge Architectural Committee, (Committee), A.B. Fairfield and Gloria Alford from violating deed restrictions covering the Stonehenge Subdivision, a tract of land located in west Harris County. After a hearing the trial court temporarily enjoined Texas Contemporary from further construction on homes begun after August 3, 1983; selling lots 14, 45, 47, 48, 51, 69, 101, 103 and 171; and commencing any construction that fails to comply with the deed restrictions. The Architectural Committee was enjoined from waiving any deed restrictions without submitting the proposed waiver to the Association's Board of Directors.

The facts in this case show that in 1975 Stonehenge Ltd. and the Fairfield Company developed the Stonehenge Section One subdivision consisting of 186 single family residences along with a clubhouse and tennis courts. All of the lots in the subdivision were subject to certain restrictive covenants including Article V, § 3(b) 14 which reads as follows:

(a) All structures will be subject to the setback or building line established by the Architectural Committee. A map showing the established building line for each Lot shall be on file with the association.

(b) No house will have a front elevation in a direct line with the house on either side of it. There will be sufficient difference in adjacent fronts to prevent a row or straight line appearance. The first choice of alignment goes to the first house built. The Owner of each Lot must present to the Architectural Committee proof that his house is not planned in line with houses on Lots on either side of his Lot.

Approximately three years later, the Fairfield Company purchased an adjoining tract of land for the development of 176 additional single family residences. Fairfield was permitted to join the new subdivision, entitled Stonehenge Section Two, with Stonehenge Section One and share in the use of the subdivision's amenities. In return for allowing additional homeowners to

use the facilities in Section One of Stonehenge, Fairfield was required to amend the restrictive covenants so as to provide identical restrictions for both sections of Stonehenge as follows:

> ...The Committee has no authority to waive any mandatory requirement of the provisions of this Article, whether plans are submitted and approved or not, absent submission of a specific written recommendation to the Board and formal approval of such waiver by the Board to be recorded in its minutes.

Thus, approval of the Association was required should the Architectural Committee desire to waive any of the restrictive covenants covering both sections of Stonehenge.

Texas Contemporary purchased nine of the vacant lots in Stonehenge Section One in the early summer of 1983 in order to construct and sell single family residences. When construction commenced, it became apparent to the Association that the homes did not comply with the restrictions governing set back lines and alternating front elevations. On July 11, 1983, the Association delivered a cease and desist letter to Texas Contemporary advising it that all construction failing to comply with the applicable restrictions would be at its peril. Texas Contemporary chose to continue construction and advised the Association that it had received the Architectural Committee's written approval for construction of all nine homes.

On August 3, 1983, appellees filed the instant suit seeking to enjoin appellants from violating the restrictive covenants. Appellees specifically prayed that Texas Contemporary be temporarily enjoined "... from performing any construction of any kind whatsoever on Defendant's Property in violation of the Restrictions of Stonehenge Subdivision, and ... from further construction on the improvements to Defendant's Property ..." and that Stonehenge Architectural Control Committee for Blocks 2 & 3 of Stonehenge Subdivision, A.B. Fairfield and Gloria Alford be temporarily enjoined "... from waiving any restrictions for construction in Stonehenge Blocks 2 & 3 in violation of the restrictions applicable to Blocks 2 & 3 of Stonehenge Subdivision." This specific prayer was followed by a specific prayer for relief upon a final hearing and a general prayer for relief as follows:

> Plaintiffs pray further that they have and recover attorney's fees as provided by Article 1293(b), Texas Revised Civil Statutes, as well as all costs of court, *and have such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.* (Emphasis supplied.)

Texas Contemporary presents seven points of error complaining in essence that: (1) the portion of the trial court's order prohibiting the sale of the homes exceeds the relief sought by appellees; (2) the trial court's injunctive order is unenforceable for failure to comply with the specificity requirements of Tex.R.Civ.P. 683; and (3) the trial court abused its discretion in granting injunctive relief based on fact issues that will be determined in a trial on the merits. In their sole point of error the Committee, Alford, and Fairfield contend the Committee had authority to approve the houses erected by Texas Contemporary.

In considering these points of error, we keep in mind the familiar rules concerning our review of the trial court's action in granting or denying a temporary injunction. First, the ultimate purpose of a temporary injunction is to preserve the status quo of the parties pending a final trial of the case on the merits. *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961). "To warrant issuance of the writ, an applicant is not required to establish that he will prevail on final trial; he needs only to plead a cause of action and to show a probable right on final trial to the relief he seeks and probable injury in the interim." *Sun Oil Company v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). On appeal, the reviewing court is limited in its consideration to the question of whether the trial

court abused its discretion in making the foregoing determination. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). *See Brooks v. Expo Chemical Co., Inc.,* 576 S.W.2d 369, 370 (Tex.1979).

Texas Contemporary's first point of error contends the trial court's order enjoining it from selling the homes in question is void and unenforceable because it exceeds the relief sought by appellees. We agree.

■ It is generally stated that, in order to warrant a court of equity to grant injunctive relief, the applicant must specify the precise relief sought and that a court is without jurisdiction to grant relief beyond and in addition to that particularly specified. *See Fletcher v. King,* 75 S.W.2d 980, 982 (Tex.Civ.App.—Amarillo 1934, writ ref'd n.r.e.); *Scoggins v. Cameron County Water Improvement District No. 15,* 264 S.W.2d 169, 173 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.); *Bird Construction, Inc. v. Gonzalez,* 595 S.W.2d 926, 929 (Tex. Civ.App.—Corpus Christi 1981, no writ). We are of the opinion that the trial court exceeded its jurisdiction by entering an injunction which precluded Texas Contemporary from selling the homes. Appellees' petition did not specifically request the trial court to enjoin the sale of the homes.

It must be noted that we do not believe that appellees would have been entitled to an injunction prohibiting the sale of the homes even had appellees specifically requested such relief. Pursuant to Article 12.007, Tex.Prop.Code.Ann. art. 12.007 (Vernon Supp.1983), appellees could have adequately protected themselves by filing a Lis Pendens notice on the lots in question. However, we need not address this issue in detail and decline to do so. .

Appellees would have us hold that their general prayer for attorney's fees, court costs and all other relief to which they are justly entitled relates back to the prayer for relief at the temporary injunction hearing. We have found no case which holds that in a hearing for a temporary injunction a general prayer for relief is sufficient to warrant relief other than that precisely requested.

Accordingly, Texas Contemporary's first point of error is sustained.

■ In its second point of error, Texas Contemporary argues that the trial court's injunction is void and unenforceable because it is so vague, uncertain and ambiguous in its terms that it fails to comply with the mandatory requirements of Rule 683, Tex.R.Civ.P. 683. Specifically, Texas Contemporary contends that the order fails to specify (1) the reasons why injury will be suffered if the injunction is not granted and (2) the act or acts sought to be restrained.

The record does not support its contentions. The trial court not only stated that the appellees had established a probable right and probable injury, but went on in additional findings specifically identifying the injuries to which appellees were exposed: that the Committee intended to continue to approve construction that did not comply with the deed restrictions; that Texas Contemporary intended to continue to construct and sell houses that failed to comply with the mandatory deed restrictions; that if Texas Contemporary continued that construction or sold any homes that it would alter the status quo and tend to make a final judgment in favor of appellees impossible or difficult to enforce; and that unless Texas Contemporary was deterred, appellees would be without adequate remedy at law and that the proposed construction, once completed and sold, would violate the restrictions and would materially affect the use and enjoyment by the appellees of their property, for which appellees could not be adequately compensated in damages. Such explication by the trial court certainly satisfies the requirements of Tex.R.Civ.P. 683.

Similarly, the order, in detail, establishes the actions of appellants that are sought to be enjoined. Texas Contemporary argues that the trial court's order uses the word "mandatory" in describing the restrictions the order is intended to enforce and forces Texas Contemporary to speculate as to what it must do or not do to comply with

the court's mandate. To the contrary, the word "mandatory" appears nowhere in the operative portion of the trial court's order. The order of the court specifically enjoins any construction on certain described lots which fails to comply with *all* the restrictions applicable to the Stonehenge Subdivision. The Committee is enjoined from waiving or varying *all* the requirements of the restrictions without first submitting the proposed waiver to the Board of Directors as required by the Amendment.

Texas Contemporary's second point of error is overruled. The sole point of error of the Committee, Alford, and Fairfield is overruled.

Texas Contemporary raises five additional points of error contending that the trial court abused its discretion in granting the injunction based on fact issues that should be determined in the trial on the merits. We cannot address these points of error due to our limited scope of review.

The appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order. Tex.R. Civ.P. 682. Accordingly, the merits of the underlying case are not presented for appellate review. At a hearing upon the request for a temporary injunction the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. On appeal, the reviewing court is limited in its consideration to whether the trial court abused its discretion in making the foregoing determination. *Davis v. Huey, supra.* The appellate court may not substitute its judgment for that of the trial court. *Texas Foundries v. International Moulders & F. Wkrs.*, 151 Tex. 239, 248 S.W.2d 460, 463 (1952).

We refuse to prematurely review the points raised by Texas Contemporary because they are outside the scope of our review. To do so would deprive appellees the right to a trial by jury.

Texas Contemporary's third through seventh points of error are overruled.

We affirm the trial court's order enjoining appellants in all respects except the portion of the order prohibiting Texas Contemporary Building Company from selling the homes in question.